IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HERBEY PORTILLO V., <br><br> Plaintiff, <br><br> vs. <br><br> DELACRUZ, CM, Individual and Official capacity;  HENRIKUS, CPI, Individual and Official capacity; JANE DOE, Nurse, Individual and Official capacity; JOHN DOE #1, Transport Officers, Individual and Official capacity; JOHN DOE #2, Transport Officer, Individual and Official capacity; CRAIG GABLE, Warden, Individual and Official capacity;  HOTTEN, CPI, Individual and Official capacity;  TENDO, CPI, Individual and Official capacity; and BOHLING, CW, Individual and Official capacity; <br><br> Defendants. | **8:25CV3** <br><br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Herbey Portillo, V.'s ("Portillo or "Plaintiff") Complaint.  Filing No. 1.   Portillo is an inmate currently confined in the Reception and Treatment Center ("RTC") in Lincoln, Nebraska.  Filing No. 1 at 2.  The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A(b).

## I.  SUMMARY OF COMPLAINT

Portillo brings this action under 42 U.S.C. § 1983 against several employees of the Nebraska Department of Correctional Services ("NDCS") at Tecumseh State Correctional Institution ("TSCI").  Filing No. 1 at 2-7.  These employees include CM Delacruz, an NDCS case manager; Cpl. Henrikus; Nurse Jane Doe, an NDCS nurse; two John Doe "transport

officers" with NDCS; Craig Gable, a warden with NDCS; Cpl. Hotten; Cpl. Tendo; and CW Bohling, who Portillo identifies as a case worker.[1] Filing No. 1 at 2-6.

In the weeks before July 4, 2022, Portillo and his cellmate, Garrett Sager, submitted multiple requests to be moved to different cells because of escalating tension between them. Filing No. 1 at 8. Portillo submitted an Inmate Interview Request ("IIR") to swap cells with an inmate in cell 2C-23, but Delacruz denied the request, stating she did not want to group all the white inmates together. *Id.* Portillo's cellmate also submitted an IIR to switch cells. *Id.* Portillo, his cellmate, and several other inmates informed TSCI staff members, including Cpl. Henrikus and Cpl. Tendo, about the tension through both IIRs and verbal grievances. *Id.* Portillo also communicated to TSCI staff and Delacruz that he feared for his safety and needed to move immediately. *Id.* Portillo alleges that Defendants conducted no investigation and did not move Portillo. *Id.*

On July 4, 2022, Sager returned from the mini yard and was patted down by Cpl. Hotten, a new staff member, who did not find anything on Sager. *Id.* at 14. Sager returned to the cell he shared with Portillo and asked Portillo to come to the cell. *Id.* As soon as Portillo stepped into the cell, Sager began stabbing Portillo repeatedly. *Id.* Sager stabbed Portillo 21 times in his face, neck, torso, arm, shoulder, and left eye. *Id.* at 8.

While the assault was ongoing, Portillo noticed that Cpl. Hotten walked back down the gallery, stopped near tables on the other side, and watched the assault but did not intervene or call for additional staff. *Id.* at 14. Portillo alleges that Hotten's failure to

---

[1] With the exception of Warden Gable, Portillo does not list the first names of any Defendant, though the Court's own research indicates Defendant Henrikus' full name is Daniel J. Henrikus. *See* State of Nebraska Employee Directory, https://ne-phonebook.ne.gov/PhoneBook/welcome.xhtml (last visited June 24, 2026). While some of Portillo's claims are sufficient to proceed, Portillo must make reasonable efforts to identify each Defendant's full name and service address before service can occur.

intervene was contrary to staff training. *Id.*  Portillo also alleges that he lost vision in one of his eyes because Hotten allowed the assault to continue.  *Id.* at 16.  Portillo further alleges that Warden Craig Gable failed to properly train Cpl. Hotten in conducting body searches, which allowed Sager to bring a modified weapon in from the mini yard.  *Id.* at 15, 16.

The day after the attack, Portillo underwent orbital floor surgery.  *Id.* at 12.  On July 9, 2022, around 11:45 p.m., Portillo woke up choking on blood pouring from his nose and mouth.  *Id.*  He was taken to the TSCI medical unit, where staff could not stop the bleeding, and was then transported by ambulance to Johnson County Hospital.  *Id.*  On the way to the hospital, Portillo filled two vomit bags with blood.  *Id.*

At Johnson County Hospital, doctors directed transport officers John Doe #1 and John Doe #2 to take Portillo to Bryan West Hospital in Lincoln, Nebraska.  *Id.* at 13.  Before proceeding to Bryan West, the transport officers stopped at TSCI to retrieve their lunch boxes and a phone.  *Id.*  During the drive to Bryan West, Portillo filled additional vomit bags with blood and was "blacking in and out."  *Id.*  Portillo arrived at Bryan West at 4:36 a.m., diaphoretic and gray and unable to walk.  *Id.*; *see also Id.* at 38.  He required fluids and blood transfusions.  *Id.* at 13.  Portillo alleges the delay in medical treatment caused Portillo to be at risk of exsanguination.  *Id.* at 12.  Portillo also alleges that Nurse Jane Doe contributed to the delay in emergency medical treatment.  *Id.* at 13.

After the assault, Portillo was placed in the Restrictive Housing Unit ("RHU").  *Id.* at 9.  Beginning on August 17, 2022, Portillo began scheduling weekly law library visits through Caseworker Bohling.  *Id.*  Over a 25-week period from September 2022 through March 2023, Portillo submitted IIRs each week requesting law library access.  *Id.* at 10.

3

However, Portillo was taken to the law library only four times:  August 17, October 12, and December 28, 2022, and January 25, 2023.  *Id.*  Portillo alleges that Bohling violated NDCS policy and failed to provide the legally required minimum of one hour of law library access per week for RHU inmates.  *Id.* at 12.  This lack of access prevented Portillo from filing the instant action sooner.  *Id.*

Portillo asserts five causes of action.  Claim One asserts that Defendants Delacruz, Cpl. Henrikus, and Cpl. Tendo failed to protect Portillo from attack, in violation of Portillo's rights under the Eighth Amendment.  *Id.* at 8.  Claim Two asserts Bohling denied Portillo access to the courts.  *Id.* at 9.  Claim Three asserts that Transport Officers John Doe #1 and John Doe #2, along with Nurse Jane Doe, delayed Portillo's emergency medical care in violation of the Eighth Amendment.  *Id.* at 12.  Claim Four asserts that Warden Craig Gable failed to train Cpl. Hotten in the proper administration of body searches.  *Id.* at 13.  Finally, Claim Five asserts that Cpl. Hotten failed to intervene while Portillo was being attacked.  *Id.* at 15.

Portillo sustained stab wounds to his chest, neck, face, and left eye, required emergency surgery, and suffers from constant nerve pain treated with Gabapentin, including loss of vision in his left eye.  *Id.* at 17.  He seeks $35 million in damages for the failure to protect claim; $75,000 in damages for the medical treatment delay; $75,000 in damages for denial of court access; $75,000 in damages for Gable's failure to train; and $75,000 in damages for Hotten's failure to intervene.  *Id.*

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to

determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION OF COMPLAINT

Liberally construing Portillo's Complaint, this is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting

under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  For the reasons stated, Portillo's official capacity claims must be dismissed.  The Court reviews each of Portillo's individual capacity claims.

## A.  Claims Against Defendants in their Official Capacities

Portillo's claims against each Defendant in his or her official capacity would be a suit against the State of Nebraska.  *See Johnson v. Outboard Marine Corp*., 172 F.3d 531, 535 (8th Cir. 1999)* ("A suit against a public employee in his or her official capacity is merely a suit against the public employer.").  The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity.  *See, e.g., Egerdahl v. Hibbing Cmty. Coll*., 72 F.3d 615, 618–19 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ*., 64 F.3d 442, 446–47 (8th Cir. 1995).  Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress.  *See, e.g., Dover Elevator Co*., 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981).

Portillo seeks solely monetary relief against each Defendant for alleged past violations of Portillo's constitutional rights.  There is nothing in the record before the court showing that the State of Nebraska waived, or that Congress overrode, sovereign immunity in this matter. Thus, Portillo's official capacity claims are barred by the Eleventh Amendment and must be dismissed.

**B. Claim One: Failure to Protect**

In Claim One, Portillo asserts that Defendants Delacruz, Henrikus, and Tendo failed to respond to Portillo's requests to change cells after Portillo made them aware of the threats from Portillo's cellmate. "[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, prison officials do not incur constitutional liability for every injury suffered by a prisoner. *Id*. at 834. To prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the inmate must demonstrate that he or she is "'incarcerated under conditions posing a substantial risk of serious harm.'" *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The second requirement concerns the state of mind of the prison official who is being sued. *Id*. It mandates that the inmate show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id*. (internal quotation omitted). This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id*. (internal quotation omitted).

"A prison official may be held liable under the Eighth Amendment if he or she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Walton v. Dawson*, 752 F.3d 1109, 1119-20 (8th Cir. 2014) ("Detainees are most vulnerable when asleep, and the Constitution guarantees a minimum right to sleep without legitimate fear of a nighttime assault by another detainee.") (internal quotation marks and citation omitted); *see also Allen v. Mills,*

7

No. 1:16-CV-26, 2016 WL 6636807, at *4 (E.D. Mo. Nov. 9, 2016) (allegations that prison officials left a prisoner-plaintiff in a cell "despite knowing [his cellmate] had threatened to harm him state claims under the Eighth Amendment").

Here, Portillo has alleged that he alerted Defendants Delacruz, Henrikus, and Tendo about the threats from Portillo's cellmate. Portillo alleges that both he and his cellmate submitted numerous requests to be moved to different cells. Filing No. 1 at 8. He specifically alleged that Delacruz denied the request and that Henrikus and Tendo were informed of the threats. *Id.* At this stage in the proceedings, Portillo has alleged enough for his failure to protect claim to proceed.

## B. Claim Two: Access to the Courts

In Claim Two, Portillo asserts that Defendant Bohling denied Portillo access to the Courts because Bohling failed to honor Portillo's numerous requests to visit the law library. It is well established "that prisoners have a constitutional right of access to the courts" which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 821 & 828 (1977). However, to recover for the deprivation of this constitutional right, "the inmate . . . must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, to prevail on an access-to-the-courts claim, a prisoner must establish that he sustained an "actual injury" by demonstrating "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353.

"Actual injury" is not satisfied by demonstrating "just any type of frustrated legal claim." Rather, inmates must only be provided the tools required to pursue direct appeals from convictions for which they are imprisoned, habeas petitions, and actions under 42 U.S.C. § 1983 to vindicate their basic constitutional rights. *Lewis*, 518 U.S. at 354-55 (prisons may not impede an inmate's ability to "attack their sentences, directly or collaterally, and . . . challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

> When any inmate, even an illiterate or non-English-speaking inmate, shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates that the State has failed to furnish *adequate* law libraries or *adequate* assistance from persons trained in the law.

*Lewis*, 518 U.S. at 356 (emphasis in original) (internal marks and citation omitted).

Thus, to successfully state an access-to-the-courts claim, "the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). The "lost" claim occasioned by the denial of an inmate's access to the courts must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*.

Here, Portillo contends that he requested visits to the law library every week for 25 weeks but, in violation of NDCS policy, Bohling only took Portillo to the law library four times. Filing No. 1 at 10. While these allegations, if true, would be concerning, Plaintiff has not alleged "actual injury" because he has timely presented his claims to this Court and multiple claims are proceeding to service of process. Therefore, Portillo cannot

9

assert that his claim has been frustrated, impeded, or lost.  Accordingly, Portillo's access-to-the-courts claim, Claim Two, will be dismissed.

## C.  Claim Three: Delay in Medical Treatment

Liberally construed, Portillo alleges John Doe #1, John Doe #2, and Nurse Jane Doe were deliberately indifferent to Portillo's medical needs in violation of the Eighth Amendment.  "To establish a constitutional violation, a detainee must demonstrate an objectively serious medical need that the defendant knew about and deliberately disregarded." *Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (citing *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018)); *see also Laganiere v. Cty. of Olmsted*, 772 F.3d 1114, 1116 (8th Cir. 2014) ("The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs."). An objectively serious medical need is one that "has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Laganiere*, 772 F.3d at 1116 (quoting *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 481 (8th Cir. 2008)).  "In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013) (quoting *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009)).  "This onerous standard requires a showing more than negligence, more even than gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id*. at 747 (internal quotations and citations omitted).

Portillo specifically asserts that the Doe Defendants were deliberately indifferent to Portillo's medical needs because, before proceeding to Bryan West Hospital, the transport officers stopped at TSCI to retrieve their lunch boxes and a cell phone. *See* Filing No. 1 at 13. "A delay in treating a serious medical need can constitute deliberate indifference." *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). When a deliberate-indifference claim is based on such a delay, courts measure "the objective seriousness of the deprivation . . . by reference to the *effect* of delay in treatment. To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119–20 (8th Cir. 2016) (emphasis in original, internal quotation marks and citations omitted). Specifically, the prisoner "must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotation marks and citations omitted).

Here, taking Portillo's factual allegations as true, they are sufficient to proceed against John Doe #1 and John Doe #2. Liberally construing Portillo's allegations, the alleged delay in medical treatment occurred when, instead of taking Portillo directly to Bryan West, Doe #1 and Doe #2 stopped at TSCI for lunch boxes and a phone. Filing No. 1 at 13. Though Portillo will be required to produce evidence that establishes the detrimental effect of the delay, for purposes of initial review, the Court concludes Portillo's allegations are sufficient to state a claim against Doe #1 and Doe #2.[2]

---

[2] The Court notes that "[i]t is generally impermissible to name fictitious parties as defendants in federal court, but 'an action may proceed against a party whose name is unknown if the complaint makes allegations specific enough to permit the identity of the party to be ascertained after reasonable discovery.'" *Perez v. Does 1-10*, 931 F.3d 641, 646 (8th Cir. 2019) (quoting *Estate of Rosenberg by Rosenberg v.*

11

The same cannot be said for Portillo's deliberate indifference claims against Nurse Jane Doe. Portillo's only mention of Nurse Jane Doe is that she, along with transport officers Doe #1 and Doe #2, caused Portillo to be at risk of exsanguination. Filing No. 1 at 13. However, "[t]o prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Kingsley v. Lawrence Cty.*, 964 F.3d 690, 700 (8th Cir. 2020) (quoting *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. 662, 676 (2009). Portillo fails to allege any facts about Nurse Jane Doe, let alone any facts supporting an inference that she was deliberately indifferent to Portillo's serious medical need. Accordingly, Nurse Jane Doe will be dismissed from this action without prejudice.

**E. Claim Four: Failure to Train**

Liberally construed, Portillo alleges Warden Craig Gable failed to properly train Cpl. Hotten in adequate searches because Hotten failed to locate a weapon on Portillo's cellmate. "To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 754 (8th Cir. 2018). "A supervisor may be held individually liable under § 1983 'if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Laganiere v. Cty. of Olmstead*, 772 F.3d 1114, 1117 (8th Cir. 2014) (quoting *Wever v. Lincoln Cty.*, 388 F.3d 601, 606

---

*Crandell*, 56 F.3d 35, 37 (8th Cir. 1995)). The Court concludes that Portillo's allegations appear to be sufficiently specific to identify the transport officers who took him to Johnson County Hospital and Bryan West Hospital on July 9, 2022. However, for service of process, Portillo must make reasonable efforts to identify each officer's full name and service address.

(8th Cir. 2004)); *see also Marsh*, 902 F.3d at 754.  In the Eighth Amendment context, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."  *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011) (quoting *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987)).

Here, Portillo makes only conclusory allegations about Warden Gable's failure to train.  Portillo's allegations in Claim Four center on Hotten's alleged failure to find a weapon when he searched Sager just before the attack.  *See* Filing No. 1 at 14.  Portillo then concludes that because Hotten failed to locate the weapon, Warden Gable failed to train Hotten properly.  *Id.* at 14-15.  These allegations are insufficient to state a claim. Portillo's conclusory allegation does not establish that Warden Gable was personally involved in training Hotten, nor does it allege how any training was constitutionally insufficient.  Portillo appears to rely on Warden Gable's general responsibility for the administration of staff at TSCI.  These allegations are insufficient to establish personal involvement, and Warden Gable will be dismissed without prejudice.

## F.  Claim Five: Failure to Intervene

Portillo alleges Cpl. Hotten failed to intervene after Sager began the attack.  The Eighth Circuit has held that ""prison officials have no duty as a matter of law to physically intervene in a prison fight which may cause them serious injury or worsen the situation." *Arnold v. Jones*, 891 F.2d 1370, 1372 (8th Cir. 1989).  Prison officials also have no duty to intervene in an attack between inmates where an armed inmate could have placed a prison guard's safety in jeopardy and the inmates outnumbered the guards.  *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995).  However, the Eighth Circuit has also denied qualified immunity to prison officials where a correctional officer witnessed an attack

13

between inmates but failed to seek assistance in a timely manner. *Cohrs v. Norris*, 210 F.3d 378, 2000 WL 433986, at *2 (8th Cir. 2000).

Accepting Portillo's allegations as true, Portillo claims Hotten witnessed the attack but did not do anything to call for help or otherwise intervene. Specifically, Portillo alleges he saw Hotten stop near tables on the other side of the block's gallery and looked at Portillo while he was being repeatedly stabbed. Filing No. 1 at 15. He alleges that Hotten did not call for assistance from other TSCI staff nor did he try to stop the attack. *Id.* at 16. Portillo alleges that Hotten's failure to intervene led to a loss of vision in one of Portillo's eyes. *Id.* For purposes of initial review, the Court concludes Portillo's allegations are sufficient to state a claim against Hotten.

## IV. CONCLUSION

In light of the liberal construction afforded to pro se litigants' pleadings, the Court concludes that Portillo has sufficiently alleged a claim for failure to protect (Claim One) against Defendants Delacruz, Henrikus, and Tendo; deliberate indifference to serious medical needs (Claim Three) against John Doe #1 and John Doe #2; and failure to intervene (Claim Five) against Cpl. Hotten. Accordingly, these claims may proceed to service of process. The Court cautions Portillo that this is only a preliminary determination based on his allegations and is not a determination of the merits of his claims or potential defenses thereto. All official capacity claims and all other claims against all other Defendants are dismissed.

As a litigant proceeding in forma pauperis in this case, Plaintiff is entitled to have service of process performed by the United States Marshals. However, the United States Marshal's Service cannot initiate service upon a defendant who cannot be properly

identified based on the information provided.  Therefore, the Court will give Plaintiff 30 days in which to take reasonable steps to provide additional identifying information for Defendants Delacruz, Tendo, John Doe #1, and John Doe #2 (e.g., first and last names) and notify the Court of that information, after which the Court will initiate service of process.  If Plaintiff is unable to provide additional information, then he must inform the Court of such.  If Plaintiff fails to respond to this order, then his claims against Defendants Delacruz, Tendo, Hotten, John Doe #1, and John Doe #2 will be dismissed without prejudice and this matter will proceed to service of process against Defendant Henrikus only.

IT IS THEREFORE ORDERED that:

1.      The following claims from Portillo's Complaint, Filing No. 1, may proceed to service of process: failure to protect against Defendants Delacruz, Henrikus, and Tendo in their individual capacities (Claim One); deliberate indifference to serious medical needs against John Doe #1 and John Doe #2 in their individual capacities (Claim Three); and failure to intervene against Cpl. Hotten in his individual capacity (Claim Five).

2.       Portillo's claims against all Defendants in their official capacities, and all claims against Defendants Bohling, Warden Craig Gable, and Nurse Jane Doe in their individual capacities, are dismissed without prejudice.

3.      The Clerk of Court is directed to terminate Defendants Bohling, Warden Craig Gable, and Nurse Jane Doe as defendants in this case.  The Clerk of Court is further directed to update the caption to identify Defendant Henrikus as "Daniel J. Henrikus" and to reflect that the remaining Defendants are being sued in their individual capacities only.

15

4.      Plaintiff will have 30 days from the date of this Memorandum and Order to take reasonable steps to provide the names or other additional identifying information for Defendants Delacruz, Tendo, Hotten, John Doe #1, and John Doe #2 and notify the Court of that information, after which the Court will initiate service of process.   If Plaintiff is unable to provide additional information regarding the Defendants' identities, then he must inform the Court of such.   Failure to take any action will result in dismissal of Plaintiff's claims against Defendants Delacruz, Tendo, Hotten, John Doe #1, and John Doe #2 without prejudice and without further notice. Plaintiff may request an extension of time in which to identify the full names and identities of Defendants Delacruz, Tendo, Hotten, John Doe #1, and John Doe #2 if additional time is needed.

Dated this 25th day of June, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

16